THE CITY OF JOLIET, Plaintiff-Appellant, *v.* ALLYN SIELAFF, Director Department of Corrections, *et al.,* Defendants-Appellees.

(No. 74-335;

Third District—April 4, 1975

James D'Amico, Corporation Counsel, of Joliet, for appellant.

William J. Scott, Attorney General, of· Chicago (Jerald B. Abrams and Charles Pesek, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Will County dismissing the declaratory judgment action of plaintiff City of Joliet,

in which it sought to restrain the State of Illinois, through its agents, in the use of certain property owned by the State in violation of the zoning ordinances of the City of Joliet. Joliet brought action against the defendants as representatives of the State of Illinois to enjoin and declare improper the proposed use of property (which had been used as a juvenile facility) for an adult correctional center. When it was disclosed that the Illinois General Assembly had refused to allocate funds for the proposed conversion, the trial court dismissed the case as moot.

On appeal in this court, the City of Joliet asserts that the trial court should not have dismissed the cause as moot for the reason that a viable controversy existed.

It appears from the record that the State of Illinois acquired the property from Will County for use as a juvenile guidance and rehabilitation center. The property was later annexed to the City of Joliet and the State of Illinois operated thereon what is described as the "River Oaks Correctional Center" which was a juvenile reception and diagnostic center. In December of 1973, the Department of Corrections announced its intention to convert this facility into an adult correctional center. As a result of public opposition and that of the City, the City of Joliet filed an action for declaratory and injunctive relief and argued that the proposal violated the city's zoning ordinances and, also, violated the 1955 agreement between the State of Illinois and Will County. A temporary injunction was granted May 1, 1974. At the hearing on the merits in this cause, counsel for defendant advised the trial court that the Illinois Legislature had passed Senate Bill 1383 which redirected funds for the River Oaks Correctional Center and permitted the use of funds only for a juvenile facility. Defendants then moved for dismissal by reason of mootness.

Director Sielaff of the Department of Corrections testified that the adult project was stopped only because of lack of funding and that the decision to convert the center to an adult facility was made after considerable community education and involvement of the Governor of the State. Director Sielaff also testified that River Oaks Correctional Center would continue to be used as a juvenile center. A member of the Illinois General Assembly testified that no further action by that body regarding the funding of the River Oaks Correctional Center would be taken until after July 1, 1975, at a minimum.

■■ It is argued by the City of Joliet, however, that although there are no current plans to convert River Oaks to an adult facility, the trial court should rule on the merits of whether such conversion violates the City's zoning ordinances and the State-County agreement. The City contends that there is an actual case in controversy of great significance to the general populace and cites *Kern v. Chicago & Eastern Illinois R.R.*

*Co.* (1963), 44 Ill.App.2d 468, 195 N.E.2d 197. In the *Kern* case a four-part test for mootness appears to list factors to consider in deciding a case where the issues may be moot. The factors outlined are:

(1) defendant's continued assertion of legality of the discontinued acts;

(2) defendant's discontinuance of the acts before or after the institution of the suit;

(3) defendant's motive or intent in discontinuing the acts; and

(4) the public interest involved in having the particular issue determined.

Since no action was actually undertaken by the State, the mere assertion that the proposed action is proper would not establish ground to attack such position in court. The timing of the discontinuance of the particular acts in relation to the instigation of the suit, does not seem to have any bearing on the propriety of the decision by the court as to the legality of the acts. Even assuming that the discontinuance of the plan came only when the legislature cut off the funding, there is still no proper basis for the present action even if we consider the so-called "public interest" exception to the mootness rule. As stated by the supreme court in *Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill.2d 1, 11, 289 N.E.2d 431, 437:

> "Where there is no real question involving actual interests or rights for a court of review to consider, the court should not review the case and render an opinion merely for the purpose of establishing precedent."

A question is said to be moot when it presents no actual controversy, interest, or rights of the parties or where the issues involved have ceased to exist. *Hill v. Murphy* (1973), 14 Ill.App.3d 668, 303 N.E.2d 208.

The public interest exception referred to in *Kern* was framed in the case of *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E. 2d 769. There a suit was brought to compel parents to allow a blood transfusion for their child despite their religious beliefs. By the time the suit reached the court the transfusion had long since taken place. The court, however, proceeded to resolve the issues even though they were moot as to the particular situation then at bar. In that case the court emphasized the public rather than the private nature of the question presented and the desirability of authoritative determination for future guidance of public officers as well as the likelihood of future recurrence of the question. (See also *Save-At Builders Products Co. v. American Federation of State, County & Municipal Employers* (3rd Dist. 1973), 13 Ill.App.3d 846, 301 N.E.2d 67; *Illinois News Broadcasters Association v. City of Springfield* (5th Dist. 1974), 22 Ill.App.3d 226, 317 N.E.2d 288.) It is asserted that the case is public because the parties are govern-

mental in nature and because many residents of Joliet are intimately interested in the outcome. The City asserts that future guidance is required as the State must know whether it can convert the facility when funds become available and the City must know if the State may proceed in total disregard to the City ordinances. It is asserted by the City that the likelihood of future recurrence is great since funding may be forthcoming shortly and defendant may then act to convert the center to an adult prison.

The defendants cite a number of cases suggesting that the courts will not decide matters where speculation is involved and point out that two matters of speculation are involved in the case before us: (1) whether the legislature will soon, or ever, appropriate funds for the conversion of River Oaks; and (2) whether, if the funds are granted, defendants will decide to proceed with use as an adult facility. Defendants also point out that even if the events happen as plaintiff suggests, there will be enough time and a more appropriate occasion to bring the instant issues before the courts. Defendants also assert that just because the parties are a City and State agency does not mean there is great public interest. Obviously the interest in the controversy, except from an academic standpoint, is centered on the immediate neighborhood in Joliet surrounding River Oaks and is not a significant statewide issue.

Nor does the situation represent that which was present in *People ex rel. Wallace v. Labrenz* which involved a crucial life and death situation, bound to recur with some frequency. The frequency factor emphasized by the court refers to frequency of similar situations and not to the probability that defendant or defendants will continue with their challenged plans, once the court proceeding is over. There is no reference to any other facility similar to River Oaks being suggested for conversion to prison-type units at the present time, so far as the record discloses. The particular situation may be one of a kind. Plaintiff will have ample time to bring the merits involved before a court, if the way is cleared for defendants to convert River Oaks to a prison, and defendants attempt to do so.

■■ For the reasons stated, we conclude that the decision of the Circuit Court of Will County dismissing the action of plaintiff in this cause as moot was proper and should be affirmed.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.